## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
_____

Sun Life Assurance Company of Canada,

        Plaintiff,

vs.

John R. Paulson, The Atticus Fund, LP, Coventry First, LLC, Erwin B. Johnson, LLP as Trustee of the Orca Finance Trust, Michael J. Antonello, and Thomas M. Petracek,

        Defendants.

Court File No._____

**COMPLAINT**

**Jury Trial Requested**

_____

Sun Life Assurance Company of Canada ("Sun Life") for its complaint against Defendants, states and alleges as follow:

## **PARTIES**

1. Plaintiff Sun Life Assurance Company of Canada ("Sun Life") is a Maine corporation with its principal place of business located at Wellesley Hills, ME.

2. Defendant John R. Paulson ("Paulson") resides at 320 North Edgewood Avenue, Golden Valley, MN 55427.

3. Defendant The Atticus Fund, LP ("Atticus") is located at 2131 Woodruff Road, Suite 2100-117, Greenville, SC 29607.

4. Defendant Coventry First, LLC ("Coventry") is located at 7111 Valley Green Road, Fort Washington, PA 19034.

5.  Defendant Erwin B. Johnson, LLP as Trustee of the Orca Finance Trust ("Orca"), dated March 31, 2006, is located at 2603 Main Street, Suite 1180, Irvine, CA 92614.

6.  Defendant Michael J. Antonello ("Antonello") resides at 3013 13th Terrace N.W., New Brighton, MN 55112.

7.  Defendant Thomas M. Petracek ("Petracek") resides at 1830 Timber Ridge Drive, Burnsville, MN 55306-7307.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction over this matter under 28 U.S.C. § 1332 because Plaintiff and Defendants are of completely diverse citizenship; and the amount in controversy exceeds Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

9.  Venue is proper in this Court under 28 U.S.C. § 1391(a) because one or more or more of the Defendants reside in this judicial district and/or a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## JURY TRIAL

10. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a jury trial on all issues triable to a jury.

## AGREEMENTS

11. On September 12, 2002, Petracek executed a Broker Acknowledgement ("Acknowledgement") concerning solicitation of applications for Sun Life products.

12. The Acknowledgement provides that in conjunction with soliciting applications, Petracek "agree[s] not to:

  (iv)  deliver a policy if I become aware of a change in the insurability of the risk;

* * *

  (vii)  demand or accept any remuneration in connection with or incidental to the solicitation, sale and servicing of the Company's products, except from the Company;

* * *

  (xi)  pay any premium to the Company on behalf of any applicant or policyholder. . . ."

13. On October 8, 2002, Antonello executed an Acknowledgement concerning solicitation of applications for Sun Life products.

14. The Acknowledgement provides that in conjunction with soliciting applications, Antonello "agree[s] not to:

  (iv)  deliver a policy if I become aware of a change in the insurability of the risk;

* * *

  (vii)  demand or accept any remuneration in connection with or incidental to the solicitation, sale and servicing of the Company's products, except from the Company;

* * *

  (xi)  pay any premium to the Company on behalf of any applicant or policyholder. . . ."

## The 360 Policy

15. On October 11, 2002, Sun Life issued life insurance policy no. 020075360 (the "360 Policy"), with a death benefit of Two Million and 00/100 Dollars ($2,000,000.00), identifying Paulson as the insured.

16. The owner of the 360 Policy on its date of issue was John R. Paulson ILIT, #2, dated 11/8/95, Timothy J. Condoluci, Trustee.

17. Sun Life issued the 360 Policy based on an application completed and executed by Paulson on September 13, 2002, with the assistance of Antonello and/or Petracek.

18. The application for the 360 Policy required Paulson to provide "details of insurance in force and pending with Sun Life and other companies," including the identity of the insurers and the "total amount" of coverage.

19. In response, the application identified Twenty Million Seven Hundred Thousand and 00/100 Dollars ($20,700,000.00) of in force life insurance coverage with four insurers.

20. The answer to the application questions did not accurately reflect the identities of other insurers or the amount of life insurance coverage in force on September 13, 2002.

21. Had Paulson identified the additional in force coverage, Sun Life would not have issued the 360 Policy.

22. Ownership of the 360 Policy was subsequently transferred to Coventry.

### The 238 Policy

23. On October 6, 2004, Sun Life issued life insurance policy no. 020104238 (the "238 Policy"), with a death benefit of Five Million and 00/100 Dollars ($5,000,000.00), identifying Paulson as the insured.

24. The owner of the 238 Policy on its date of issue was John R. Paulson ILIT, #1, dated 6/9/80, John R. Paulson, Trustee.

25. The 238 Policy was issued on the basis of an application prepared and signed by Paulson on October 6, 2004, with the assistance of Antonello and/or Petracek.

26. The application for the 238 Policy required Paulson to provide "details of insurance in force and pending with Sun Life and other companies," including the identity of the insurers and the "total amount" of coverage.

27. The application to the 238 Policy disclosed Twenty-Four Million and 00/100 Dollars ($24,000,000.00) of in force coverage with five different insurers.

28. Paulson actually had between Seventy Million and 00/100 Dollars ($70,000,000.00) to Eighty Million and 00/100 Dollars ($80,000,000.00) of in force life insurance coverage with as many as eleven different insurers.

29. Had the additional amount of in force coverage been disclosed, Sun Life would not have issued the 238 Policy.

30. Ownership of the 238 Policy was transferred to Atticus on December 7, 2006.

### **The 970 Policy**

31. On October 6, 2004, Sun Life issued life insurance policy no. 20104970 (the "970 Policy"), with a death benefit of Two Million and 00/100 Dollars ($2,000,000.00), identifying Paulson as the insured.

32. The owner of the 970 Policy on its date of issue was the John R. Paulson ILIT, #2 dated 11/8/95, Timothy J. Condoluci, Trustee.

33. The 970 Policy was issued on the basis of an application prepared and signed by Paulson on October 6, 2004, with the assistance of Antonello and/or Petracek.

34. The application for the 970 Policy required Paulson to provide "details of insurance in force and pending with Sun Life and other companies," including the identity of the insurers and the "total amount" of coverage.

35. The application to the 970 Policy disclosed Twenty-Four Million and 00/100 Dollars ($24,000,000.00) of in force coverage with five different insurers.

36. Paulson actually had between Seventy Million and 00/100 Dollars ($70,000,000.00) to Eighty Million and 00/100 Dollars ($80,000,000.00) of in force life insurance coverage with as many as eleven different insurers.

37. Had the additional amount of in force coverage been disclosed, Sun Life would not have issued the 970 Policy.

38. Ownership of the 970 Policy was transferred to Orca on January 17, 2007.

## The 971 Policy

39. On October 6, 2004, Sun Life issued life insurance policy no. 20104971 (the "971 Policy") with a death benefit of Two Million and 00/100 Dollars ($2,000,000.00), identifying Paulson as the insured.

40. The owner of the 971 Policy on the date of issue was the John R. Paulson ILIT, #2, dated 11/8/95, Timothy J. Condoluci, Trustee.

41. The 971 Policy was issued on the basis of an application prepared and signed by Paulson on October 6, 2004, with the assistance of Antonello and/or Petracek.

42. The application for the 971 Policy required Paulson to provide "details of insurance in force and pending with Sun Life and other companies," including the identity of the insurers and the "total amount" of coverage.

43. The application to the 971 Policy disclosed Twenty-Four Million and 00/100 Dollars ($24,000,000.00) of in force coverage with five different insurers.

44. Paulson actually had between Seventy Million and 00/100 Dollars ($70,000,000.00) to Eighty Million and 00/100 Dollars ($80,000,000.00) of in force life insurance coverage with as many as eleven different insurers.

45. Had the additional amount of in force coverage been disclosed, Sun Life would not have issued the 971 Policy.

46. Ownership of the 971 Policy was transferred to Orca on January 12, 2007.

## The 972 Policy

47. On October 6, 2004, Sun Life issued life insurance policy no. 20104972 (the "972 Policy") with a death benefit of Three Million and 00/100 Dollars ($3,000,000.00), identifying Paulson as the insured.

48. The owner of 972 Policy on the date of issue was the J. Paulson Family Grandchildren's Trust, dated 10/31/2000, Timothy Condoluci, Trustee.

49. The 972 Policy was issued on the basis of an application prepared and signed by Paulson on October 6, 2004, with the assistance of Antonello and/or Petracek.

50. The application for the 972 Policy required Paulson to provide "details of insurance in force and pending with Sun Life and other companies," including the identity of the insurers and the "total amount" of coverage.

51. The application to the 972 Policy disclosed Twenty-Four Million and 00/100 Dollars ($24,000,000.00) of in force coverage with five different insurers.

52. Paulson actually had between Seventy Million and 00/100 Dollars ($70,000,000.00) to Eighty Million and 00/100 Dollars ($80,000,000.00) of in force life insurance coverage with as many as eleven different insurers.

53. Had the additional amount of in force coverage been disclosed, Sun Life would not have issued the 972 Policy.

54. Ownership of the 972 Policy was transferred to Orca on January 12, 2007.

## The 973 Policy

55. On October 6, 2004, Sun Life issued life insurance policy no. 20404973 (the "973 Policy") with a death benefit of One Million and 00/100 Dollars ($1,000,000.00), identifying Paulson as the insured.

56. The ownership of the 973 Policy was the John R. Paulson, ILIT, dated 6/19/80, John R. Paulson, Trustee.

57. The 973 Policy was issued on the basis of an application prepared and signed by Paulson on October 6, 2004, with the assistance of Antonello and/or Petracek.

58. The application for the 973 Policy required Paulson to provide "details of insurance in force and pending with Sun Life and other companies," including the identity of the insurers and the "total amount" of coverage.

59. The application to the 973 Policy disclosed Twenty-Four Million and 00/100 Dollars ($24,000,000.00) of in force coverage with five different insurers.

60. Paulson actually had between Seventy Million and 00/100 Dollars ($70,000,000.00) to Eighty Million and 00/100 Dollars ($80,000,000.00) of in force life insurance coverage with as many as eleven different insurers.

61. Had the additional amount of in force coverage been disclosed, Sun Life would not have issued the 973 Policy to Paulson.

62. Ownership of the 973 Policy was transferred to Atticus on December 7, 2006.

## The 974 Policy

63. On October 6, 2004, Sun Life issued life insurance policy no. 20404974 (the "974 Policy") with a death benefit of Two Million and 00/100 Dollars ($2,000,000.00), identifying Paulson as the insured.

64. The owner of 974 Policy on the date of issue was the J. Paulson Family Grandchildren's Trust, dated 10/31/2000, Timothy Condoluci, Trustee.

65. The 974 Policy was issued on the basis of an application prepared and signed by Paulson on October 6, 2004, with the assistance of Antonello and/or Petracek.

66. The application for the 974 Policy required Paulson to provide "details of insurance in force and pending with Sun Life and other companies," including the identity of the insurers and the "total amount" of coverage.

67. The application to the 974 Policy disclosed Twenty-Four Million and 00/100 Dollars ($24,000,000.00) of in force coverage with five different insurers.

68. Paulson actually had between Seventy Million and 00/100 Dollars ($70,000,000.00) to Eighty Million and 00/100 Dollars ($80,000,000.00) of in force life insurance coverage with as many as eleven different insurers.

69. Had the additional amount of in force coverage been disclosed, Sun Life would not have issued the 974 Policy.

70. Ownership of the 974 Policy was transferred to Atticus on December 7, 2006.

71. Antonello and Petracek received commissions from Sun Life in conjunction with its issuance of the Policies.

72. Upon information and belief, Antonello and Petracek received payment for brokering the sale of each of the Sun Life Policies to life settlement companies.

### CLAIM I
### RESCISSION
### PAULSON

73. Sun Life restates and realleges all preceding paragraphs of the Complaint as though set forth at length herein.

74. Paulson either omitted or misrepresented information on the applications for insurance for the Sun Life Policies.

75. Paulson's omissions and/or nondisclosure of information amount to material misrepresentations on the insurance applications and Sun Life would not have issued its policies had the insurance applications been accurate.

76. In addition, at the time each of the Sun Life policies was issued, Paulson intended to sell it at the conclusion of the contestability period.

77. Paulson did not have an insurable interest and the Sun Life policies are void ab initio.

78. As a result, Sun Life is entitled to rescind its policies.

### CLAIM II
### NEGLIGENT MISREPRESENTATION
### PAULSON

79. Sun Life restates and realleges all preceding paragraphs of the Complaint as though set forth at length herein.

80. Paulson supplied false information on his insurance applications.

81. Paulson failed to use reasonable care or competence in obtaining that information and/or validating that information.

82. Sun Life relied on the information in the insurance applications.

83. Sun Life was justified in relying on the information regarding the existence of other life insurance policies.

84. Sun Life was financially harmed by relying on the insurance applications by issuing its policies when it otherwise would not have if there had been full disclosure on the insurance applications.

### CLAIM III
### FRAUD/MISREPRESENTATION
### PAULSON

85. Sun Life restates and realleges all preceding paragraphs of the Complaint as though set forth at length herein.

86. By failing to disclose the existence of additional life insurance policies and/or accurate information regarding health on the insurance applications, Paulson falsely represented a material fact to Sun Life.

87. At the time Paulson made the false representations on his insurance applications, he either knew the representations were false or represented that he knew about these facts when he did not know if they were true or false.

88. Paulson made the false representations on his insurance applications with the intention that Sun Life would rely upon them.

89. Sun Life relied and acted on the false representations by issuing its policies when it otherwise would not have if there had been full disclosure on the insurance applications.

90. Sun Life has been damaged as a direct result of relying on the false representations in issuing its policies.

### CLAIM IV
### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
### PAULSON

91. Sun Life restates and realleges all preceding paragraphs of the Complaint as though set forth at length herein.

92. Paulson had a duty to act in good faith when completing the insurance applications for the Sun Life policies.

93. Paulson breached his duty to act in good faith by including material misrepresentations and/or omissions on the application for the Sun Life policies.

94. Sun Life has been damaged by Paulson's breach.

## CLAIM V
## MUTUAL MISTAKE OF MATERIAL FACT
## PAULSON

95. Sun Life restates and realleges all preceding paragraphs of the Complaint as though set forth at length herein.

96. Alternatively, Paulson was unaware of the existence of other in-force life insurance policies when he signed the applications for the Sun Life policies.

97. Sun Life, in justifiable reliance upon Paulson's insurance applications, mistakenly believed that there were no other life insurance policies other than those identified on the applications.

98. Thus, Sun Life and Paulson were under the same erroneous belief as to the fact of the existence of the additional life insurance coverage.

99. The existence of additional life insurance policies is a material fact affecting formation of the insurance contract and issuance of the Sun Life policies.

100. This mutual mistake of fact operates to void the Sun Life policies.

## CLAIM VI
## BREACH OF CONTRACT
## ANTONELLO & PETRACEK

101. Sun Life restates and realleges all preceding paragraphs of the Complaint as though set forth at length herein.

102. Pursuant to the Acknowledgments signed by Antonello and Petracek, each agree not to:

> (iv) deliver a policy if I become aware of a change in the insurability of the risk;

&#42;&#42;&#42;

(vii) demand or accept any remuneration in connection with or incidental to the solicitation, sale and servicing of the Company's products, except from the Company;

&#42;&#42;&#42;

(xi) pay any premium to the Company on behalf of any applicant or policyholder;

103. Antonello and Petracek are in breach of the Acknowledgement by delivering policies in which they were aware of an increased risk of insurability, providing a portion of the premium, and or accepting remuneration from life settlement companies and/or Paulson incidental to their solicitation, sale or servicing of the Sun Life Policies.

104. As a direct and proximate result of their breach of the contract, Sun Life has been damaged and is entitled to recover all commissions paid to or for the benefit of Paulson in relation to the policies in an amount in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00) to be determined at trial.

## CLAIM VII
## FRAUD, DECEIT AND MISREPRESENTATION
## ANTONELLO & PETRACEK

105. Sun Life restates and realleges all preceding paragraphs of the Complaint as though set forth at length herein.

106. Paulson made false representations of material fact on his applications for the policies by failing to disclose the existence and amount of other in-force insurance policies.

107. Defendant Paulson also made false representations of material fact on his applications for the Sun Life policies by representing that he intended to replace existing

policies with the policies he sought to procure from Sun Life when, at the time he made the representations, Paulson had no present intention to do so.

108. At the time Paulson made the representations, Petracek and Antonello knew they were false, or falsely represented that they knew these facts to be true when they did not, or recklessly failed to determine the truth of falsity of same.

109. Petracek and Antonello allowed Paulson make the false representations on the applications for the policies with the intention that Sun Life rely upon them.

110. Sun Life justifiably relied upon the accuracy and truthfulness of Paulson's disclosures and Petracek and Antonello's application relative to the existence and amount of life insurance coverage in the applications for the policies by issuing the policies to Paulson and providing Seventeen Million and 00/100 Dollars ($17,000,000.00) in insurance coverage to Paulson.

111. As a direct and proximate result of the fraudulent conduct of Petracek and Antonello as described above, Sun Life has been damaged in an amount in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

### CLAIM VIII
### NEGLIGENT MISREPRSENTATION
### ANTONELLO & PETRACEK

112. Sun Life restates and realleges all preceding paragraphs of the Complaint as though set forth at length herein.

113. Petracek and Antonello had a duty in written the applications for insurance to use reasonable care to ensure that the information they allowed to be supplied to Sun

Life, including information related to the existence and amount of in force and pending life insurance, was true and correct.

114. Petracek and Antonello failed to exercise reasonable care to ensure that the information they supplied to Sun Life in writing applications for the policies related to the existence and amount of in force and pending life insurance was true and correct.

115. Petracek and Antonello negligently misrepresented and omitted from disclosure the existence and amount of in force and pending life insurance when they assisted in preparing and submitting the applications for the Sun Life policies.

116. Sun Life was justified in relying upon and did rely upon the truthfulness of Petracek and Antonello related to the existence and amount of in force and pending life insurance when it issued the policies to Paulson.

117. As a direct and proximate result of Petracek and Antonello's negligent misrepresentations as described above, Sun Life has been damaged in an amount in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00) to be proven at trial.

## CLAIM IX
## CIVIL THEFT: INSURANCE FRAUD
## PAULSON, ANTONELLO & PETRACEK

118. Sun Life restates and realleges all preceding paragraphs of the Complaint as though set forth at length herein.

119. Paulson made false representations of material fact and concealed material facts in his applications for the Sun Life policies. Antonello and/or Petracek countersigned and submitted the applications with knowledge that the information related

to other insurance, as set forth in the applications, was false, or in reckless disregard of the truth or falsity of same.

120. Antonello and Petracek submitted the false applications for pecuniary gain in the form of commissions and to deprive Sun Life of money and property by inducing it to issue policies.

121. The conduct of Paulson, Antonello and Petracek constitutes insurance fraud in violation of Minn. Stat. § 609.611.

122. Sun Life relied on Paulson's false representations and Antonello and Petracek's failure to disclose material information related to the existence of other life insurance.

123. As a result of the conduct of Paulson, Antonello and Petracek, Sun Life parted with tangible property when it issued the policies to Paulson for the benefit of the owners of the policies and when it paid commissions to or for the benefit of Antonello and Petracek.

124. The fraudulent conduct of Paulson, Antonello and Petracek in the procurement of the Sun Life policies constitutes theft in violation of Minn. Stat. § 609.52, subd. 2(3).

125. Pursuant to Minn. Stat. § 604.14, subd. 1, by virtue of Paulson, Antonello and Petracek insurance fraud and theft, Sun Life is entitled to recover the value of the policies, plus such other damages as are authorized by law.

## CLAIM XI
## CONSPIRACY TO DEFRAUD
## ANTONELLO & PETRACEK

126. Sun Life restates and realleges all preceding paragraphs of the Complaint as though set forth at length herein.

127. Upon information and belief, Paulson, Antonello and Petracek assisted in providing the Sun Life policies and preparing the applications with knowledge that Paulson had fraudulently failed to disclose material information in his life insurance applications.

128. By writing the Sun Life policies and submitting the applications, Antonello and Petracek acted in furtherance of an unlawful conspiracy to defraud Sun Life.

129. By virtue of their own participation in the conspiracy, Paulson, Antonello and Petracek are liable for all damages suffered by Sun Life as a result of the fraud, in an amount in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sun Life Insurance Company of Canada prays for judgment of the Court against Defendants for the following relief:

1. Rescission of the Sun Life insurance policies referenced herein;

2. A declaration that the Sun Life policies are void;

3. Alternatively, damages in an amount over Seventy-Five Thousand and 00/100 Dollars ($75,000.00);

4. All reasonable fees and costs incurred in the bringing of this lawsuit; and

5.  Any other relief as the Court deems just and equitable.

Dated:  August 31, 2007 **KRASS MONROE, P.A.**

s/ Terrance J. Wagener
Terrance J. Wagener
John Harper III
8000 Norman Center Drive, Suite 1000
Minneapolis, MN   55437-1178
Telephone:  (952) 885-5999
Fax:  (952) 885-5969
Attorneys for Plaintiff

G:\WPDATA\S\SUN LIFE 10355\010-PAULSON\PLD\8-31-07 COMPLAINT.DOC