```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                     Civil No. 07-3877(DSD/JJG)
```

Sun Life Assurance Company
of Canada,

       Plaintiff,

v.                                                          **ORDER**

John R. Paulson, The Atticus
Fund, LP, Coventry First, LLC,
Erwin B. Johnson, LLP as
Trustee of the Orca Finance Trust,
Michael J. Antonello, and
Thomas M. Petracek,

       Defendants.

    John Harper III, Esq., Terrance J. Wagener, Esq. and
    Krass Monroe, PA, 8000 Norman Center Drive, Suite 1000,
    Minneapolis, MN 55437, and James S. Bainbridge, Esq. and
    Drinker, Biddle & Reath, LLP, One Logan Square, 18th &
    Cherry Streets, Philadelphia, PA 19103, counsel for
    plaintiff.

    Thomas E. Brever, Esq. and Foster & Brever, 2855 Anthony
    Lane, Suite 200, St. Anthony, MN 55418, counsel for
    defendant Paulson.

    Rick E. Kubler, Esq. and Gray, Plant, Mooty, Mooty &
    Bennett, 80 South Eighth Street, Suite 500, Minneapolis,
    MN 55402, counsel for defendant Atticus Fund.

    Brent A. Lorentz, Esq., Brooks F. Poley, Esq. and
    Winthrop & Weinstine, 225 South Sixth Street, Suite 3500,
    Minneapolis, MN 55402, counsel for defendants Antonello,
    Johnson and Petracek.

        This matter is before the court on plaintiff's appeal of Magistrate Judge Susan R. Nelson's September 3, 2008, order, plaintiff's motion to certify a question of law to the Minnesota

Supreme Court and defendants The Atticus Fund, LP[1] ("Atticus") and Erwin & Johnson, LLP as Trustee of the Orca Finance Trust's ("Orca") separate motions for judgment on the pleadings.

## BACKGROUND

On August 31, 2007, plaintiff Sun Life Assurance Company of Canada ("Sun Life") filed a complaint seeking rescission of seven life insurance policies obtained by defendant John R. Paulson ("Paulson").[2] Sun Life issued a $2 million policy to Paulson on October 11, 2002, and on October 6, 2004, issued six more policies with $15 million in total benefits. As required by Minnesota Statutes § 61A.03, subdivision 1(c), the policies contained incontestability clauses precluding Sun Life from challenging their validity two years after the date of issuance. Dismissed defendant Coventry First, LLC ("Coventry") obtained the October 11, 2002, policy on an unspecified date. On December 7, 2006, Atticus obtained three of the October 6, 2004, policies valuing $8 million, and in January 2007 Orca obtained the remaining policies. The complaint alleges that Paulson, with the assistance of his insurance agents, defendants Michael J. Antonello ("Antonello") and

---

[1] The complaint allegedly incorrectly refers to Attilanus Fund I, L.P. as The Atticus Fund. The court continues to refer to The Atticus Fund until receiving a motion or stipulation to change the caption.

[2] Sun Life's ten-count complaint also seeks damages and declaratory relief.

Thomas M. Petracek ("Petracek"), fraudulently obtained the policies with the intent to sell them at the conclusion of their contestability periods.

Coventry moved to dismiss for failure to state a claim on October 15, 2007, arguing that the incontestability clause prevented Sun Life from seeking rescission of its policy. Sun Life responded that the policy was void *ab initio* for lack of an insurable interest and thus the incontestability clause was unenforceable. The court's February 15, 2008, order ruling on Coventry's motion recognized that Minnesota courts have not expressly addressed whether an individual lacks an insurable interest if, at the time he procured a life insurance policy, he intended to transfer it to a third party without an insurable interest. Sun Life Assurance Co. v. Paulson, Civ. No. 07-3877, 2008 U.S. Dist. LEXIS 11719, at *4-5 (D. Minn. Feb. 15, 2008). Predicting how the Minnesota Supreme Court would address the issue, the court stated that:

> [A] life insurance policy [is] void as against public policy if the policy was procured under a scheme, purpose, or agreement to transfer or assign the policy to a person without an insurable interest in order to evade the law against wagering contracts. Moreover, the mutual intent of the insured and the third party to avoid the prohibition on wagering contracts determines the existence of such a scheme, purpose, or agreement. The most important factor in determining the parties' intent is whether or not the assignment from the insured to the third party was done in pursuance of a preconceived agreement.

3

Id. at *5-7 (citations and quotations omitted).  Because Sun Life had not alleged that a third party intended to purchase Paulson's policy at the time he obtained it, the court granted Coventry's motion.  Id. at *8.

On March 25, 2008, more than three weeks after the scheduling order's deadline, Sun Life moved to amend its complaint to conform to the February 15 order.  Sun Life's proposed amended complaint[3] describes the emergence of a secondary market for life insurance policies.  Specifically, the proposed amended complaint identifies schemes in which life settlement providers approach individuals over the age of seventy with net worths exceeding $1 million to take out life insurance policies.  (Prop. Am. Compl. ¶ 17.)  The life settlement providers pay the prospective insured's costs, including premium payments, and acquire the policy soon after it is issued or after expiration of the contestability period.  (Id. ¶¶ 18, 22.)  These transactions are oftentimes facilitated by third party brokers.  (Id. ¶ 12.)

The proposed amended complaint alleges that beginning in 2002, Paulson, at the age of eighty, obtained thirty life insurance policies with an aggregate face value of $80 million as "part of an agreement, scheme, purpose and/or plan to transfer or assign" those policies to Coventry, Orca, Atticus or other entities after

---

[3] Sun Life attached a copy of the proposed amended complaint to an April 14, 2008, amended motion.

4

expiration of the contestability period. (Id. ¶¶ 24, 26, 45, 56, 67, 78, 89, 100, 111.) Antonello and Petracek allegedly helped Paulson apply for the Sun Life policies and brokered the transactions with the life settlement providers. (Id. ¶ 33.) Moreover, the proposed amended complaint alleges that Coventry, Orca, Atticus or another entity paid the premiums on the Sun Life policies. (Id. ¶¶ 46, 57, 68, 79, 90, 101, 112.)

Sun Life postponed a hearing on its motion to amend until August 18, 2008, to discover evidence of a third party with no insurable interest who, at the time Paulson procured the disputed insurance policies, intended to later obtain those policies. After taking several depositions, including those of Antonello and Petracek, and receiving thousands of pages of documents, Sun Life discovered no such evidence. On September 3, 2008, the magistrate judge denied without prejudice Sun Life's motion to amend, holding that the motion was futile, made in bad faith and frivolous. (Mag. Order at 5-10.) Sun Life appealed the magistrate judge's order on September 17, 2008. On October 3, 2008, Sun Life moved to certify the following question to the Minnesota Supreme Court:

> Does Minnesota law require evidence of an agreement between the insured/policyholder and an entity lacking an insurable interest at the time the life insurance policy is procured in order to establish that a policy is void *ab initio* for lack of an insurable interest?

(Doc. No. 94.) On October 7, 2008, Orca and Atticus separately moved to dismiss pursuant to Federal Rule of Civil Procedure 12(c).

5

**DISCUSSION**

**I.   Appeal of Magistrate Judge's Order**

A district court ordinarily reviews a magistrate judge's denial of a motion to amend under a clearly erroneous or contrary to law standard.  <u>See</u> 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. L.R. 72.2(a).  However, a motion to amend denied as futile is subject to de novo review.  <u>Cf.</u> <u>United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa</u>, 269 F.3d 932, 936 (8th Cir. 2001) (district court's denial of leave to amend based on futility reviewed de novo on appeal).

Federal Rule of Civil Procedure 15(a)(1) provides for amendment of a pleading as a matter of course if no responsive pleading has been filed or "within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar."  A court may also permit a party to amend its pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Denial of a motion to amend is appropriate upon a showing of "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."  <u>Becker v. Univ. of Neb.</u>, 191 F.3d 904, 907-08 (8th Cir. 1999) (citations and quotations omitted).  Denial of a motion to amend as futile is appropriate if the proposed amended complaint cannot survive a motion to dismiss for failure to state a claim.

In re Senior Cottages of Am., LLC, 482 F.3d 997, 1001 (8th Cir. 2007).  A court will dismiss a complaint for failure to state a claim if, after taking all facts alleged in the complaint as true, those facts fail "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

As noted in the court's February 15, 2008, order, the mutual intent of the parties to avoid the prohibition on wagering contracts determines whether a policy is void *ab initio* for lack of an insurable interest.  Sun Life Assurance Co., 2008 U.S. Dist. LEXIS 11719, at *5-7.  The proposed amended complaint's rescission claim alleges that at the time Paulson procured the disputed policies, he intended and agreed to convey them to Coventry, Atticus, Orca or an unidentified third party lacking an insurable interest in his life and that one of those parties intended and agreed to purchase the policies at the time Sun Life issued them and paid all of the premiums thereafter.  (Id. ¶¶ 46, 57, 68, 79, 90, 101, 112, 123, 124.)  These allegations leave open the possibility that the intent of an unidentified third party rendered the policies void *ab initio*.  Nevertheless, the court determines that the proposed amended complaint's factual allegations with respect to Paulson and the three identified parties would satisfy Federal Rule of Civil Procedure 8(a)'s liberal pleading requirement.  Therefore, amendment of Sun Life's complaint would not be futile.

The magistrate judge also concluded that Sun Life's motion to amend was frivolous and made in bad faith because Sun Life had no evidence to support its allegations.  (Mag. Order at 5-8.)  A court should deny a motion to amend "on the merits 'only if it asserts clearly frivolous claims or defenses.'"  Becker, 191 F.3d at 908 (quoting Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd., 32 F.3d 1244, 1255 (8th Cir. 1994)).  "Likelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous."  Id. (citation omitted).

After several months of discovery, Sun Life has no evidence that Coventry, Atticus or Orca communicated with Paulson prior to or contemporaneous with his procurement of the disputed policies or that any of the companies paid the policies' premiums.  Further, Sun Life has not identified another party with an intent to evade the law against wagering contracts.  Nevertheless, Sun Life argues that the identity of a third party buyer is unnecessary to establish mutual intent because evidence of Paulson's intent to sell the policies permits an inference that another party intended to buy the policies at the time they were issued.  Stated differently, Sun Life argues that Paulson's unilateral intent to transfer the disputed policies at the time of their procurement renders the policies void *ab initio*.  The law of this case, however, requires evidence of the intent of a third party to buy

the policies at the time they were procured, which necessarily requires identification of that party. See Sun Life Assurance Co., 2008 U.S. Dist. LEXIS 11719, at *6-8; see also Gander Mountain Co. v. Cabela's, Inc., 540 F.3d 827, 830 (8th Cir. 2008) ("The law-of-the-case doctrine ... posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citations and quotations omitted)).  Therefore, as stated in the court's earlier order, Paulson's intent "is irrelevant without facts ... suggesting that a third party lacking an insurable interest intended, at the time Paulson procured the [policies], to acquire the[m] upon expiration of the contestability period." Sun Life Assurance Co., 2008 U.S. Dist. LEXIS 11719, at *7-8.

Sun Life also argues that evidence of Paulson's agreement with Antonello and Petracek to help Paulson obtain and transfer the disputed policies satisfies the mutual intent requirement.  The relevant third parties, however, are those with whom Paulson allegedly agreed to assign the policies.  No evidence supports such an agreement with Antonello and Petracek.  Therefore, the court

9

determines that the magistrate judge correctly denied without prejudice defendant's motion to amend as frivolous.[4] Accordingly, the magistrate judge's order is affirmed.

## II. Motion to Certify

Minnesota Statutes § 480.065 permits a federal court to certify a question of law to the Supreme Court of Minnesota if the answer to that question "may be determinative of an issue in pending litigation in the certifying court and there is no controlling [Minnesota] appellate decision, constitutional provision, or statute."  In assessing a certification motion, a court considers whether: (1) the legal question is an "extremely close one"; (2) Minnesota courts have provided guidance on the question; (3) the case is primarily a federal case; and (4) the question is likely to recur.  Hatfield v. Bishop Clarkson Mem. Hosp., 701 F.2d 1266, 1268 (8th Cir. 1983) (citation omitted).  The most important consideration is whether a court is "'genuinely uncertain about a question of state law.'" Johnson v. John Deere Co., 935 F.2d 151, 153 (8th Cir. 1991) (quoting Tidler v. Eli Lilly & Co., 851 F.2d 418, 426 (D.C. Cir. 1988) (citation omitted)). However, certification "is not a procedure by which federal courts may abdicate their responsibility to decide a legal issue when the

---

[4] The court notes that if Sun Life brings another motion to amend after further discovery it must show cause to modify the scheduling order. See Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008).

10

relevant sources of state law available to it provide a discernible path for the court to follow." Tidler, 851 F.2d at 426.  Moreover, after "a question is submitted for decision in the district court, the parties should be bound by the outcome unless other grounds for reversal are present." Perkins v. Clark Equip. Co., 823 F.2d 207, 210 (8th Cir. 1987).  A court considers a request to certify by the party originally seeking federal jurisdiction with particular skepticism.  See Marvin Lumber & Cedar Co. v. PPG Indus., 34 F. Supp. 2d 738, 752 (D. Minn. 1999), rev'd on other grounds, 223 F.3d 873 (8th Cir. 2000).

In this case, Sun Life chose a federal forum to litigate this state law matter and sought certification only after the court's February 15 order and several months of failed discovery.  These facts alone warrant denial of Sun Life's motion.  Nevertheless, the court also determines that certification is inappropriate because the court is not genuinely uncertain about the legal question that Sun Life seeks to certify.

As noted in the court's February 15 order, under Minnesota law a life insurance policy is void *ab initio* as a wagering contract if the insured lacked an insurable interest in the insured life at the time of procuring the policy.  See Sun Life Assurance Co., 2008 U.S. Dist. LEXIS 11719, at *3-4 (citations omitted).  Ordinarily, an insured has an interest in his own life that "sustains the policy." Christenson v. Madson, 149 N.W. 288, 289 (Minn. 1914).

11

Moreover, one who obtains insurance on his own life may name a beneficiary without an insurable interest or later assign the policy to one without an insurable interest. See id. (beneficiary); Peel v. Reibel, 286 N.W. 345, 346 (Minn. 1939) (assign). "The essential thing is that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazards of a life in which the insured has no interest." Rahders, Merritt & Hagler v. People's Bank of Minneapolis, 130 N.W. 16, 17 (Minn. 1911); see also Peel, 286 N.W. at 346 (assignment valid if "made in good faith and not as a mere cover for taking out insurance in the beginning in favor of one without insurable interest." (quotation omitted)); accord Grigsby v. Russell, 222 U.S. 149, 154-56 (1911).

In light of this law, the court determined in its February 15 order that "the Minnesota Supreme Court would consider a life insurance policy void as against public policy if the policy was procured under a scheme, purpose, or agreement to transfer or assign the policy to a person without an insurable interest in order to evade the law against wagering contracts." Sun Life Assurance Co., 2008 U.S. Dist. LEXIS 11719, at *5-6 (quotations omitted). Sun Life now seeks to challenge through certification the court's additional determination that "the mutual intent of the

12

insured and the third party to avoid the prohibition on wagering contracts determines the existence of such a scheme, purpose, or agreement."[5] Id.

Sun Life has identified no cases in which a life insurance policy was declared void *ab initio* because the insured intended at the time he procured the policy to assign it to an unidentified individual on an unspecified date. Rather, the cases Sun Life cites hold that the disputed policy was not void, or the identity and intent of a third party purchaser was not an issue. See Bankers' Reserve Life Co. v. Matthews, 39 F.2d 528, 529-30 (8th Cir. 1930) (policy not void and identity of alleged third party known); Life Prod. Clearing LLC v. Angel, 530 F. Supp. 2d 646, 647-50 (S.D.N.Y. 2008) (third party purchaser's identity and intent known); Wuliger v. Mfrs. Life Ins. Co., Civ. No. 3:03-7457, 2008 U.S. Dist. LEXIS 9809, at *22-27 (N.D. Ohio Feb. 11, 2008) (same); First Penn-Pac. Life Ins. Co. v. William R. Evans, Chartered, Civ. No. 05-444, 2007 U.S. Dist. LEXIS 45112, at *12 n.7 (D. Md. June 21, 2007) (policy not void based on insured's unilateral intent). The mutual intent requirement, however, is supported by case law. See, e.g., Travelers Ins. Co. v. Reiziz, 13 F. Supp. 819, 820 (E.D.N.Y. 1935) (assignee must participate in some manner in policy

---

[5] Sun Life frames the issue as whether evidence of an agreement is required. The February 15 order, however, makes clear that an agreement is relevant insofar as it reflects the mutual intent of the parties. Therefore, the court addresses the mutual intent requirement.

procurement); Lawrence v. Travelers' Ins. Co., 6 F. Supp. 428, 430 (E.D. Pa. 1934) (unilateral intent of insured to transfer policy insufficient to establish wagering contract); Fyffe v. Mason, 268 S.W.2d 29, 31-32 (Ky. 1954) (insufficient evidence to show beneficiary induced procurement of insurance policy); Davis v. Gulf States Ins. Co., 151 So. 167, 169 (Miss. 1933) (policy invalid if beneficiary induced procurement by insured to evade law against wagering contracts); 44 C.J.S. Insurance § 355 (2007); 44 Am. Jur. 2d Insurance § 1001 (2003).  Therefore, the court determines that the Minnesota Supreme Court would find that the mutual intent requirement strikes the appropriate balance between prohibiting wagering contracts and giving life insurance policies "the ordinary characteristics of property," including free alienability.  See Grigsby, 222 U.S. at 154-56; Hiller v. County of Anoka, 529 N.W.2d 426, 429 (Minn. Ct. App. 1995) (free alienability a contemporary principle of property ownership).  Accordingly, Sun Life's motion for certification is denied.

**III.  Motions for Judgment on the Pleadings**

Orca and Atticus argue that they are entitled to judgment on the pleadings for the same reasons that Coventry's motion to dismiss was granted.[6]  Federal Rule of Civil Procedure 12(c)

---

[6] Sun Life requested a stay of Orca's and Atticus's motions pending resolution of Sun Life's appeal of the magistrate judge's denial of its motion to amend and its motion for certification. The motions for judgment on the pleadings, however, have been fully (continued...)

provides that "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings."  A court will grant judgment on the pleadings "'where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002)).  A court views "all facts pleaded by the nonmoving party as true and grant[s] all reasonable inferences in favor of that party."  Id. (citation omitted).  When deciding a motion for judgment on the pleadings, a court "generally may not consider materials outside the pleadings."  Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982 (8th Cir. 2008) (citation omitted).

Sun Life makes two arguments in opposition to the motions of Atticus and Orca.  First, based on Paulson's deposition testimony, Sun Life argues that all of the disputed policies are void because they were obtained without Paulson's knowledge and consent.  Second, Sun Life argues that one of the policies obtained by Orca is void *ab initio* because it was procured by John R. Paulson & Associates, LLC, an entity in which Antonello, Petracek and Timothy Condoluci owned an eighty-four percent interest at the time of the policy's procurement.  Both of these arguments, however, would

---

[6](...continued)
briefed and in consideration of the court's resolution of the other outstanding motions, Sun Life's request is denied.

require the court to improperly consider facts and allegations not raised in the complaint. Therefore, because the complaint's allegations against Atticus and Orca are legally indistinguishable from those against Coventry, the court grants the motions of Atticus and Orca for judgment on the pleadings for the reasons provided in the court's February 15, 2008, order dismissing Coventry.

## CONCLUSION

Accordingly, based upon the file, record and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Sun Life's appeal of the magistrate judge's order [Doc. No. 83] is denied;

2. Sun Life's motion to certify a question of law to the Minnesota Supreme Court [Doc. No. 94] is denied;

3. Defendant Erwin & Johnson LLP as Trustee of the Orca Finance Trust's motion to dismiss [Doc. No. 99] is granted; and

4. Defendant The Atticus Fund, L.P.'s motion to dismiss [Doc. No 104] is granted.

Dated:   December 3, 2008

                                       s/David S. Doty
                                       David S. Doty, Judge
                                       United States District Court